[Civ. No. 1875.   Third Appellate District.—November 1, 1918.]

## EQUITABLE TRUST COMPANY OF NEW YORK (a Corporation), Respondent, v. WESTERN LAND AND POWER COMPANY (a Corporation), et al., Defendants; AUGUST ANDERSON et al., Appellants.

CORPORATIONS — FOREIGN CORPORATION — CARRYING ON BUSINESS.—A foreign corporation merely acting as trustee for bondholders under a trust deed, executed to the corporation as security for a bond issue, is not "carrying on business" within the meaning of section 408 of the Civil Code.

ID.—FORECLOSURE OF MORTGAGE—EVIDENCE.—In an action to foreclose a mortgage securing a bonded indebtedness, evidence by the holder of a majority of the bonds that the mortgagor had issued the bonds in question was inadmissible, the bonds themselves, with the proceedings under which they were executed, being the best evidence.

ID.—HARMLESS ERROR.—Error in receiving inadmissible secondary evidence of the execution of the bonds in such case was harmless, where evidence was received, without objection, showing the delivery of bonds substantially, in their terms, the same as a sample introduced in evidence, and also the same as those alleged in the complaint.

APPEAL from a judgment of the Superior Court of Lassen County. H. D. Burroughs, Judge.

The facts are stated in the opinion of the court.

R. M. Rankin, for Appellants.

I. M. Peckham, for Respondent.

CHIPMAN, P. J.—This is an action to foreclose a deed of trust or first mortgage on lands in Lassen County made by defendant Power Company to plaintiff to secure a five hundred thousand dollar issue of first mortgage bonds of defendant Power Company, in two series of one thousand and five hundred dollar denominations, respectively, as provided for by deed of trust.

The trust deed was made July 15, 1911, and was recorded August 1, 1911. Pursuant thereto the Power Company issued 290 of the one thousand dollar bonds and 360 of the five hundred dollar bonds. The Power Company failing to pay the accrued interest, the majority bondholders requested the trustee to foreclose, and this action was instituted in compliance with that request.

September 20, 1912, appellant Anderson, having taken judgment against the Power Company for $671 on certain assigned labor claims, at execution sale thereunder bought the Power Company's equity of redemption in 280 acres of the land covered by the deed of trust, and, subsequently, April 27, 1914, conveyed an undivided half interest in the land so purchased to appellant Emily C. Dodge.

The action was tried September 1, 1916, and plaintiff had judgment foreclosing said deed of trust, which was entered October 26, 1916. The Power Company defaulted. Defendants Anderson and Dodge appeal from the judgment.

It is contended by appellants that the evidence is insufficient to support certain findings of fact by the court: That the evidence does not sustain the averment by the complaint, which was denied by the answer, that the Power Company "made, executed and delivered and issued for a valuable consideration" the bonds described in the complaint.

In establishing its case plaintiff introduced a certified copy of the statutes of the state of New York incorporating the

plaintiff corporation and defining its powers and duties; also a certified copy of the articles of incorporation of the defendant Power Company on file in the office of the Secretary of State.    Plaintiff then offered in evidence two sample copies of these bonds, one numbered D 36 for five hundred dollars and one numbered M 1 for one thousand dollars.    Objection was made as immaterial, irrelevant, and incompetent—"incompetent particularly for the reason that it has not been shown that the plaintiff corporation is entitled to carry on business in the state of California or to acquire the title, the legal title, to any property.    Mr. Peckham (plaintiff's attorney) : That is not in issue by the pleadings and therefore stands admitted."    After argument, the court overruled the objection and admitted these sample copies of bonds as exhibits 3 and 4.    These samples purport to set forth the facts as to the Power Company's purpose in issuing the bonds; sample D 36 recites that "this bond [one of the samples] is one of a series of coupon bonds of the Western Land and Power Company, numbered consecutively from D 1 to D 400 and from M 1 to M 300 both inclusive, . . . subject to the terms of the mortgage or trust deed hereinafter referred to," the aggregate amount not to exceed five hundred thousand dollars.    Other recitals follow not necessary to be stated. Sample M 1 is to like effect.

Plaintiff holds a charter under the laws of the state of New York; its place of business is in the city of New York, and the character of its business requires that it be there transacted; the bonds in question and the interest coupons are payable there.    So far as appears, plaintiff has never transacted any business in this state, unless it can be said that to act as trustee for the holders of the Power Company's bonds, collect accruing interest, taking title to property as security and otherwise discharging the duties of trustee can be said to violate section 408 of the Civil Code.

In *Roseberry* v. *Valley Building & Loan Assn.*, 35 Colo. 132, [83 Pac. 637], it was said: "The only business which plaintiff actually transacted in this state is that involved in this action.    There is no averment that it has made any other loan or sold any other stock, and proof of the allegation which is made would be that plaintiff loaned money to defendant and took his mortgage.    It has been repeatedly decided in this jurisdiction that a single act of business does not come

within the purview of these statutes." There the statutes are somewhat similar to ours.

The question was quite fully discussed in *Ammons* v. *Brunswick-Balke-Collender* Co., 5 Ind. Ter. 636, [82 S. W. 937], where an act of Congress was involved which required certain things to be done before any foreign corporation shall begin to "carry on business" in the Indian Territory. It was there held "that a single act of business is not doing or carrying on business within the meaning of the act of Congress." The rule is similarly stated in volume 13 of American and English Encyclopedia of Law, 869, and numerous cases cited in support of the text. It was held, in *Wilson* v. *Peace,* 38 Tex. Civ. App. 234, [85 S. W. 31], that "the ownership of land [in Texas] by a foreign corporation and the lease of the same on shares and the assignment of the rent by it, do not constitute doing business in this state, in such sense as to require such corporation to obtain a permit from the secretary of state." (Syllabus.) To like effect is the decision in the case of *Louisville Property Co.* v. *Mayor & City Council of Nashville,* 114 Tenn. 213, [84 S. W. 810].

Respondent contends, aside from the decisions above pointed out, that the objection is an affirmative defense, not set up in the answer, and, in the absence of proof of noncompliance, the deed of trust had its usual effect. The legal title vested in the trustee, unless defendant showed from the records of the county the special facts showing it did not. However this may be, the cases seem to hold with much unanimity that an isolated act, such as is here shown, is not carrying on business in the state within the meaning of the statute.

The only objection made to the sample bonds was that plaintiff had not complied with the statute. The objection was properly overruled and the samples became part of the record.

At this point the deposition of Harry H. Gallinger, taken in San Francisco, was opened. Objection to its being read was made on the ground that the time given for taking the deposition was too short, and on the further ground that a stipulation had been made to take Gallinger's deposition in New York city. The objection was overruled and the deposition admitted. It appeared that this witness was the holder of a majority of the bonds issued by the Power Company.

Over objection that it was not the best evidence, the witness
was permitted to testify, to the direct question, that the
Power Company, on July 15, 1911, at the city of New York,
"made and executed seven hundred first mortgage bonds each
of which bore the date of July 15, 1911. . . . The Court:
The record is the best evidence.   Mr. Peckham: It is evi-
dence of the number of bonds.   It would be impractical for
us to produce all the bonds issued.   The Court: Objection
overruled."   Counsel handed witness the complaint and asked
him to examine the copy of the bond set forth in paragraph
VI and to state whether the bonds mentioned by the witness
in his previous answer "were substantially in the words and
figures of the copy of the bond in the complaint."   The wit-
ness answered, "Yes, sir."   He testified that he had none of
the bonds with him; that they were with the Equitable Trust
Company of New York and were deposited with the company
in June, 1915.   The witness, over objection that it was not
the best evidence, testified that, after the execution of the
bonds, as mentioned by him, and prior to the commencement
of the action, the Power Company, "for a valuable considera-
tion, made, executed, delivered and issued two hundred and
ninety of the first mortgage bonds of the denomination of one
thousand dollars"; and he gave like answer as to three hun-
dred and sixty bonds of the denomination of five hundred
dollars.   Counsel for plaintiff, in support of the questions,
remarked: "It is impracticable to produce every bond issued
by this company and we have sample copies of them before
the court. . . . That is one of the bonds before the court and
this is testimony as to the number issued."   The witness then
testified, to which there was no objection made, that the plain-
tiff company accepted the trust involved in the trust deed,
dated July 15, 1911, and duly qualified thereunder and ever
since has been and now is acting under that deed of trust and
mortgage.   He testified, also, without objection, that, on June
9, 1915, he presented to plaintiff at its office in New York cer-
tain described coupons calling for interest on said bonds and
demanded payment; that payment was refused; that on that
day the witness was the holder of a majority of the outstand-
ing bonds of said Power Company.   He was then asked to
state whether or not on that date he "requested plaintiff to
declare the principal and interest of all bonds secured by that
first mortgage or trust deed and then and there outstanding

to be due and payable immediately.'' Objection was made to the question that the demand is by the deed of trust required to be in writing and the writing is the best evidence, and, further, that the question calls for a conclusion of the witness. It appeared that this request was in writing. To the question was added a statement of the purpose of the request, to which like objection was made. At the suggestion of plaintiff's attorney, the objection was overruled, "subject to counsel's motion to strike out.'' No answer is in the record, but the witness was shown a paper which, the record states, ''shows on its face that it is a carbon copy of that written request.'' The witness stated that it was a true copy of the original signed by him before a notary public. The copy was offered in evidence. Objection was made that this copy is secondary evidence; ''that the original is filed with the plaintiff and presumed to be in the plaintiff's possession and is the best evidence . . . and has not been introduced or accounted for.'' The court seemed to be of the opinion that as the original paper is in the possession of plaintiff this copy was inadmissible to establish the fact in question, but ''for the purposes of the deposition'' the court overruled the objection. ''Mr. Rankin (defendants' attorney) : That didn't go to the extent of proving the allegation of the complaint? The Court: That is a question in my mind whether it goes that far or not, whether the court would receive it for that purpose. If it is evidence of that fact you have it in the record.'' The document, Exhibit ''B,'' was then read in evidence. Counsel for defendants then made a motion to strike out the answers given by the witness, and, after some remarks, said: ''The copy you offer, is it the demand that the Equitable Trust Company declare all bonds due and payable and so forth, is that the paper you referred to? Mr. Peckham: Yes. Mr. Rankin: Then I am mistaken. The Court: Motion denied.'' It is not quite clear what counsel meant by saying he was mistaken, but, followed as it was by the ruling apparently different from the impression the court had of the admissibility of the document, we must conclude that counsel intended to waive his objection.

Mr. Peckham was then sworn as a witness and testified, without objection, that he personally served upon the Power Company the declaration of the Equitable Trust Company which was received by the Power Company June 19, 1915.

This declaration recites the proceedings set forth in the complaint leading up to the default of the Power Company; that the holder of a majority of the bonds now outstanding of said company has filed a written request to declare the principal of said bonds due and payable immediately, and closing with the declaration that "the principal of all bonds secured by the said first mortgage or trust deed now outstanding is due and payable." It was then shown that, on June 23, 1915, plaintiff demanded of the Power Company payment of the principal sum of all outstanding bonds secured by said mortgage of four hundred and seventy thousand dollars together with interest. The refusal of the Power Company to pay said demand was also shown.

Turning back to certain rulings of the court, we think the testimony of witness Gallinger that the Power Company executed seven hundred first mortgage bonds was inadmissible. The bonds themselves, together with the proceedings of the Power Company under which they were executed, would be the best evidence. The witness, however, was permitted to testify, without objection, that the copy of these bonds as set forth in the complaint was substantially the same as the bonds to which he had just referred. The sample copies previously admitted recited the facts substantially as testified to by the witness.

A word as to the admission of witness Gallinger's testimony that the Power Company executed and delivered to plaintiff the number of bonds in question.

It was held in *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181, 193, 194, [44 L. Ed. 423, 20 Sup. Ct. Rep. 311, 316], that "it was sufficient to prove that the bonds were valid and were outstanding obligations of the company, and it was not necessary to show in whose hands they were or to require their production." It was pointed out that the bonds were often widely scattered, making it impossible to produce them, and that "the practice has been to order a decree of foreclosure and sale without their production." It has been shown that the bonds in the present case are in the possession of the plaintiff for purposes of the trust. A sample copy is in evidence and, without objection, it was shown that the bonds mentioned in the complaint are substantially in their terms the same as the sample. They import execution, consideration, and validity on their face, and their possession by plaintiff implies that

they were delivered. There is sufficient evidence, admitted without objection, to show that the bonds mentioned in the complaint were delivered to plaintiff to be held and dealt with in accordance with the trust imposed upon it, and that the action is but the final step contemplated by all the parties in case of default by the Power Company.

Conceding error in the rulings above noted, they are not of such gravity as to justify the reversal of the judgment. It appears clearly enough that under no circumstances could a new trial give superiority to appellants' lien. The sale under which they claim is based upon a judgment entered more than a year after the recording of the deed of trust and mortgage given by the Power Company and the issuance and delivery of its bonds to the plaintiff for the purposes of the trust.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.